the fact that the defendants have pleaded severally. The more important requisite to the right of discontinuance is the several character of the alleged cause of action. In this case, inasmuch as Barnard is manifestly not liable, the mere fact that he had united in the plea of the general issue with another defendant, is not sufficient to affect the question of discontinuance. "In the administration of justice, matter of form, not absolutely subjected to authority, may well yield to the substantial purposes of justice." Minor v. Mechanics' Bank, 1 Pet. [26 U. S.] 46.

A discontinuance as to the defendant in regard to whose liability the jury has not found, and an entry of judgment upon the verdict against the defendant who is found liable, if the court is satisfied with the verdict, is in accordance with the practice of the supreme court of the state of New York. Porter v. Mount, 45 Barb. 422. So, also, in a criminal case, where the jury had omitted to find on one of the counts, the court permitted such count to be discontinued, and rendered sentence in accordance with the verdict, upon the other counts. U. S. v. Keen [Case No. 15,510].

Section 723 of the New Code of Procedure of the State of New York provides, that "the court may, upon the trial, or at any other stage of the action, before or after judgment, in furtherance of justice, and on such terms as it deems just, amend any process, pleading or other proceeding, by adding or striking out the name of a person as a party," &c.

If the plaintiffs enter, within fourteen days, a discontinuance as to Barnard, judgment will thereafter, and after the expiration of the stay already directed, be entered upon the verdict, against the other defendants. Upon such discontinuance, the motion for a venire facias de novo will be overruled. If a discontinuance is not entered, or an amendment is not made, Barnard will be entitled to a new trial, but not the other defendants.

---

## Case No. 15,912.

### UNITED STATES v. OGDEN.

[Nowhere reported; opinion not now accessible.]

---

## Case No. 15,913.

### UNITED STATES v. OGDEN.

[See Cases Nos. 16,341a and 16,342b.]

---

## Case No. 15,914.

### UNITED STATES v. The OHIO.

[Newb. 409.] [1]

District Court, E. D. Louisiana. Nov., 1849.

SLAVERY—IMPORTATION—PRESUMPTION OF FREEDOM—FORFEITURE.

1. The United States district attorney for this district, filed a libel in rem against the bark

---

[1] [Reported by John S. Newberry, Esq.]

Ohio, to have her declared forfeited, for having brought into the United States a colored person from a foreign port or place, in violation of the 1st section of the act of congress of the 20th April, 1818 (3 Stat. 450).

2. The provisions of this act were not intended to apply to a case where a colored person, born and reared within the United States, sails to a foreign port or place on board of an American ship and returns to a port of the United States.

3. And where it appears from evidence, that the negro boy came on board of the vessel in the port of Baltimore in the capacity of a servant, and that he had for several years resided in New Jersey or New York, in the family of the master of the ship, the presumption is that he was free, notwithstanding the declaration of the custom officer, that the master claimed him as his slave.

4. In no event can this libel in rem for a forfeiture be sustained, since it does not appear from evidence, that the master, even if he brought the colored boy in question from a foreign port or place, did so on board this particular vessel.

In admiralty.

Mr. Durant, for the United States.
Mr. Bradford, for respondent.

McCALEB, District Judge. This action is brought against the vessel to have her declared forfeited in consequence, as it is alleged, of her having brought into this port a colored person from a foreign port or place.

It is shown by two officers of the customhouse in this city, that when they went on board the vessel shortly after her arrival in port, that the master declared that the negro boy on board was his slave. This declaration unexplained would doubtless raise a strong presumption against the master, as to his intention of holding the negro in involuntary servitude. But all the evidence must be taken together. Two of the crew of the vessel were examined, and testified that the boy came on board the vessel at Baltimore as a servant, and had continued on board in that capacity during the voyage to several foreign ports and back to this port. Another witness testifies that he knew the boy as long ago as 1842 in the city of New York, where he was then employed as a servant in the family of the master. He also testifies that he was the son of a free woman in Rio Janeiro, who was herself employed in the family of the American consul at that port.

Without taking into consideration the testimony of the master or his wife, which was received subject to objection upon the ground of interest, I am unable to discover any violation of law so far as this vessel is concerned. It is not shown that this master while in command of this vessel, brought the negro boy from a foreign port or place. It is clearly shown, on the contrary, that the boy came on board in the capacity of a servant before the vessel sailed from the port of Baltimore. It is also shown that he was several years before that time residing